UNITED STATES ex rel. CASIMANO v. COMMISSIONER OF IMMIGRATION et al.

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 15.

1. Aliens ⟨⟨=54(17).

District Court cannot review weight of evidence supporting finding of Board of Special Inquiry directing deportation of alien, under Comp. St. §§ 4289¼b, 4289¼jj.

2. Aliens ⟨⟨=53.

Alien becoming insane within Comp. St. § 4289¼b, and becoming public charge within five years after entry from causes not affirmatively shown to have arisen subsequent to entry, is subject to deportation.

3. Aliens ⟨⟨=54(17).

Where record justifies conclusion of medical examiner that alien was insane at time of entry, court may not examine as to weight of reasons from which conclusion was drawn.

Appeal from the District Court of the United States for the Eastern District of New York.

Application by the United States, on the relation of Carmela Casimano, for writ of habeas corpus against the Commissioner of Immigration and others. From an order sustaining the writ, the Commissioner appeals. Reversed.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, of Brooklyn, N. Y., of counsel), for appellant.

Louis J. Castellano, of Brooklyn, N. Y., for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellee, a native of Italy, aged 29 years, entered the United States on June 21, 1921. Her husband, an alien, lived here. In April, 1924,

she was committed to a state hospital for the insane, and there remained as a patient when, on September 11, 1924, the deputy medical examiner of the hospital issued a certificate stating that she was suffering from "extreme excitement, restlessness, noisy and boisterous conduct, psycho-motor stress, assaultive tendencies, apprehension, refusal of food, physical exertion, and lack of insight. Diagnosis, manic-depressive insanity, manic type. Prognosis unfavorable; recovery unlikely. Constitutional psychopathic inferiority, and general mental instability at time of entry. Lucid intervals may occur, but a recurrence is to be expected. On paragraph 3 of this certificate, examination of the alien, consideration of her (family) clinical and personal history (statements of relatives), and on the subsequent course of her illness, on considering all of these facts, I conclude that the cause of this alien's psychosis could not have arisen subsequent to landing, and that she will continue to be a public charge."

In October, 1924, the appellant was formally placed under arrest for deportation on a warrant charging that she was a person of constitutional psychopathic inferiority at the time of her entry; that she was a person likely to become a public charge at the time of her entry; that she had become a public charge in King's Park State Hospital, King's Park, N. Y., within five years after her entry into the United States, from causes not affirmatively shown to have arisen subsequent thereto. She was granted hearings with full and fair opportunity to adduce proof to sustain her burden, and the Board of Special Inquiry directed her deportation under sections 3 and 19 of the Act of February 5, 1917 (39 Stat. 875 [Comp. St. §§ 4289¼b, 4289¼jj]). The District Judge reversed this conclusion on this habeas corpus proceeding. The Commissioner of Immigration has taken this appeal from the order entered thereon.

[1-3] The alien concededly was insane when this proceeding to deport her was commenced. If she comes within section 3 as an insane person or a person of constitutional psychopathic inferiority, and is found within the United States as such within five years after her entry, and became a public charge for causes not affirmatively shown to have arisen subsequent to landing, she was subject to deportation under the statute. There is abundant evidence to support the finding of the Board of Special Inquiry, and its conclusions as to the nature and cause of her insanity, also that she was a public charge. The District Court could not, under the law, review its weight. That the courts have no power to set aside a board's finding of fact having any evidence

to support it, has frequently been announced. U. S. ex rel. La Reddola v. Tod (C. C. A.) 299 F. 592; U. S. ex rel. Furst v. Curran (C. C. A.) 9 F.(2d) 921; U. S. ex rel. Haft v. Tod, etc. (C. C. A.) 300 F. 918; Tullman v. Tod (C. C. A.) 294 F. 87. No complaint is made of unfairness of the hearings, or that full opportunity was not accorded the appellee to present her case. The decision of the District Court rests upon a disagreement with the finding of fact by the Board of Special Inquiry. This the court below erroneously interfered with.

The case of Brugnoli v. Tod (C. C. A.) 300 F. 918, is referred to as an authority in support of the action of the District Court. In that case, this court said:

"The crucial question, however, which is printed upon this certificate, reads as follows: 'Said disabilities are in my opinion not due to causes arising subsequent to the time when the alien landed in the United States, and I reach this conclusion upon the following facts and through the following processes of reasoning.' The answer to the foregoing is as follows: 'This is the case of an elderly woman, native of Italy, who has shown no improvement during her hospital residence, who is suffering from a chronic mental disease. She will continue to be a public charge; the cause of her psychosis could not have arisen subsequent to landing.' No facts whatever are stated upon which this answer is based. No reasons whatever are assigned, from or by virtue of which the physician arrived at the conclusion that the cause of relator's psychosis could not have arisen subsequent to landing. Of course, we do not review the merit of expert opinion; but the relator is entitled to an examination upon which such an opinion can be based, and, while we do not suggest either the extent or the limits of such an examination, it is plain, inter alia, that there must be some previous history upon which to predicate the conclusion that the alien, at the time of entry, was a member of one or more of the classes excluded by law. The certificate of the physician does not, in any manner, disclose the condition of the alien at the time of entry nor any facts upon which his opinion as an expert is based."

The cases are distinguishable. The record in this case is sufficient as to previous history to justify the conclusion reached by the medical examiner, and we are not permitted to examine as to the weight of the reasons which caused him to reach the conclusion he did before issuing the certificate or expressing his opinion at the hearings.

Order reversed.