## UNITED STATES ex rel. POWLOWEC v. DAY, Commissioner of Immigration.

Circuit Court of Appeals, Second Circuit.
June 10, 1929.

No. 370.

James C. Thomas, of New York City, for the appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for the appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). This unhappy man has, so far as we can see, been long detained over nothing more than a form of words. There is no doubt that at one time he was actively deranged and that from this he has recovered. The question is whether there is any evidence that shows him to have a mental makeup which falls within the phrase used in the statute. That was intended to include those who by nature were subject to insanity of one sort or another; that is to say, whose constitution was such that they had not normal mental stability. When that is so, their inferiority necessarily antedates their arrival here, because it is inherent in their nervous structure. Whether any insanity is of another kind is not for us to say; we must accept the opinion of those formally qualified. It is enough that they shall be accredited in the customary way and honestly believe that the alien falls within the class. That Barton and Wearne both think so is plain, unless we are to draw verbal distinctions which are meaningless and would result in making such cases depend upon the peculiar jargon employed. If this results in too severe a test, and puts the fate of aliens wholly in the hands of any psychiatrist whom the Secretary of Labor is willing to accept, the remedy is with Congress. The whole subject is one of excessive uncertainty at best; whoever is fitted for the responsibility, it is certain that we are not; we must act upon what those tell us who carry the proper credentials.

Indeed, we should not have found it necessary to say anything whatever, except that U. S. ex rel. Brugnoli v. Tod (C. C. A.) 300 F. 918, is now, as it often is, pressed upon us as an authority against accepting the certificate of a psychiatrist in such cases. In that case the alien showed no sign of insanity upon her arrival, and the certificate contained no evidence that there had been any until less than a year later. We said that there must be some previous history to indicate that the alien was insane on her arrival, and it appears to follow that an examination made when the alien is actively deranged is not alone basis enough to infer that he falls within the class. In U. S. ex rel. Furst v. Curran, 9 F.(2d) 921 (C. C. A. 2), there was a previous history, as apparently in U. S. ex rel. Casimano v. Tod, 15 F.(2d) 555 (C. C. A. 2). Here there was none.

We think that our conclusion was incorrect, and we overrule the doctrine there laid down. It is obvious that we are in no position to say as matter of law that a clinical examination is not enough to make an accurate diagnosis of the nature of the malady, and that it proceeds from the weave of the alien's nervous organization. Such inductions are the commonplace of science, psychiatral and others. How reliable they may be we cannot judge, but they are the accepted method and the law presupposes them. The Secretary of Labor may not think them enough, but in that he judges the weight of the evidence; we can only say whether it is evidence at all. We think it is, though the alien may be entitled to cross-examine the physician and expose the baselessness of his conclusion.

It is indeed another matter whether the certificate should not itself state the evidence upon which the conclusion is based, and what efforts have been made to ascertain the facts between entry and arrest. Certainly that is desirable. We have only to determine whether when the diagnosis proceeds upon clinical examination at the time of acute disorder, unaccompanied by any evidence of earlier derangement, it may be sufficient. We think that it may.

Order affirmed.