BILLINGS v. SITNER.*

(Circuit Court of Appeals, First Circuit. December 8, 1915.)

No. 1071.

1. ALIENS ⬤⟹54—DETENTION AND RETURN OF IMMIGRANTS—DETERMINATION OF RIGHT TO ENTER.

Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 906, § 24 (Comp. St. 1913, § 4273), provides that every alien, not appearing to the examining immigrant inspector to be clearly and beyond a doubt entitled to land shall be detained for examination by a board of special inquiry. Section 17 (section 4265) provides that the physical and mental examination of arriving aliens shall be made by medical officers of the Public Health and Marine Hospital Service, who shall certify for the information of the immigration officers and boards of special inquiry all physical and mental defects or diseases observed by them. Section 10 (section 4255), provides that the decision of a board of special inquiry, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens affected with tuberculosis, or with a loathsome or dangerous contagious disease, or with any mental or physical disability bringing the alien within any of the classes excluded from admission to the United States. Held, that a board of special inquiry has no right to base its decision on the right of an alien to admission on the certificate of the inspecting medical officer, without exercising its own judgment, after considering, not only the certificate, but whatever other evidence there may be touching the alien's right to enter.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬤⟹54.]

2. ALIENS ⬤⟹54—DEPORTATION—HEARING.

Under Immigration Act 1907, § 21 (Comp. St. 1913, § 4270), providing that, in case the Secretary of Labor shall be satisfied that an alien has been found in the United States in violation of that act, or that an alien is subject to deportation, he shall cause such alien, within three years after landing or entry, to be taken into custody and returned to the country whence he came, where an alien excluded by a board of special inquiry was by mistake released from custody, and subsequently arrested on a departmental warrant, a hearing to enable him to show cause why he should not be deported was authorized by the statute, and he could not have been lawfully deported without such an opportunity to be heard.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬤⟹54.]

3. ALIENS ⬤⟹54—DEPORTATION—HEARING.

An alien, arrested on the warrant of the Secretary of Labor for deportation, was denied a fair hearing where the immigration officers did

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 6, 1916.

not exercise their own judgment as to whether he should be deported, but considered themselves bound by the decision of a medical examiner and the report of a medical board that he was feeble-minded.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ☞54.]

4. HABEAS CORPUS ☞111—DISCHARGE—CONDITION.

In a habeas corpus proceeding, by an alien not given a fair hearing before being ordered deported, the court properly discharged him from custody; but the order discharging him should have been conditional, and to be effective only in case the immigration officer should fail to give him a fair hearing within a reasonable time.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 100; Dec. Dig. ☞111.]

Appeal from the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Jr., Judge.

Habeas corpus by Simon Sitner against George B. Billings. From an order discharging the petitioner, defendant appeals. Reversed and remanded.

Leo A. Rogers, of Boston, Mass. (George W. Anderson and William C. Matthews, both of Boston, Mass., on the brief), for appellant.

William H. Lewis, of Boston, Mass., for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. [1] Sitner, an alien immigrant, arrived at Boston May 7, 1913, and was detained for examination before a board of special inquiry according to section 24 of the Immigration Act. 34 Stat. 898, as amended by 36 Stat. 263 (Comp. St. 1913, §§ 4244, 4247).

After hearings on May 8 and 10, 1913, the board voted on the latter date to exclude him. It appears from the facts agreed by the parties that the board so voted because it assumed that a certificate by the medical officer who had examined him under section 17 of the act, to the effect that he was feeble-minded and his vision was defective, of itself bound the board to exclude, notwithstanding any other evidence.

We agree with the District Court that this assumption was erroneous, and prevented the hearing from being the fair hearing required by law. Section 10 of the act provides that the board's decision "based upon the certificate of the examining medical officer" shall be final as to the rejection of aliens affected with mental or physical disability which would bring them within the excluded classes. But this cannot mean that the certificate is to take the place of a fair hearing by the board. Such a construction would result in giving the inspecting medical officer, instead of the board, the power of final decision. Although immigration rule 17, subdivisions 4, 5 (note), state that the board is "virtually compelled" to base its decision upon the certificate, we hold that it has no right to do so without exercising its own judgment, after considering not only the certificate, but whatever other evidence there may be touching the alien's right to enter. The District

Court had previously so held in another case. Re Joyce, 212 Fed. 282, 285.

[2] After the above vote to exclude him, Sitner was by mistake released from the custody of the immigration officers. The mistake having been discovered, he was arrested on a warrant issued May 15, 1913, by the Secretary of Labor under section 21 of the act. The warrant, in pursuance of immigration rule 22, subdivision 4, directed the immigration inspector to grant him a hearing to enable him to show cause why he should not be deported. The act provides for such a hearing in such cases. Low Wah Suey v. Backus, 225 U. S. 460, 467, 32 Sup. Ct. 734, 56 L. Ed. 1165. Nor without such an opportunity to be heard on the questions involving his right to be in this country can an alien be lawfully deported. Japanese Immigration Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. Even if the board of special inquiry had admitted Sitner, instead of excluding him, the Secretary might have ordered him deported, if the second hearing called for by the warrant had resulted in a contrary decision. Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029.

[3] The hearing directed by the warrant was held May 16, 1913, before the Commissioner General and an Assistant Commissioner of Immigration. A report dated May 20th was afterward presented to the Assistant Commissioner, made by a medical board, convened on that day for the examination of Sitner, and consisting of three medical officers, such as required by section 17 of the act. Their report set forth that they—

"found him to present such a degree of mental deficiency as to justify certification as feeble-minded in accordance with official instructions governing the medical examination of aliens."

Also that:

"He is markedly near-sighted and has loss of third finger of right hand."

The Assistant Commissioner thereupon, after reciting the proceedings on May 8th and 10th at the hearing before the board of special inquiry, found that no new evidence presented at the hearing before him on May 16th affected in any manner the decision made by that board on May 10th; also that:

"The decision of the medical examiner is controlling, and the said certificate is further strengthened and fortified by the report of the medical board sitting this day."

He therefore recommended deportation, and upon his findings and recommendation the Secretary of Labor issued a warrant for Sitner's deportation on May 29, 1913.

It has been further agreed by the parties in the District Court that in making his above finding and recommendation the immigration officer—

"acted in the belief that he was bound to recommend deportation of said alien upon the decision of the medical examiner and report of the medical board under the rules and regulations of the Immigration Department, notwithstanding any other evidence."

. We are obliged, upon this admission, to take the same view of the hearing under the warrant as that above taken regarding the earlier hearing before the board of special inquiry, and for the like reasons. While an excluding decision, to be final in such a case, must be based upon a medical certificate, the act has not given the power of finally determining the question of an alien's right to enter the country, even if he is afflicted with physical or mental disability, to any medical board, any more than to the medical examiner. The immigration officer or officers before whom the alien was to show cause not having exercised their own judgment, nor regarded anything beyond the medical certificates, it cannot be said that Sitner had a fair hearing under the warrant.

Sitner's petition for a writ of habeas corpus was filed July 15, 1913. The answer, filed as of January 13, 1914, set up in justification of his detention only that he was held under the above warrant for his arrest issued May 15, 1913. It made no reference to the hearing upon that warrant, nor to the subsequent warrant for his deportation issued May 29, 1913. These matters, however, were brought before the court by the agreed statement of facts, which has been referred to, filed in the District Court January 17, 1914. On January 19, 1914, the court granted Sitner's petition and ordered the writ to issue. From the order granting the petition and issuing the writ no appeal was taken, and it has not been assigned as error.

The writ having issued, there was a hearing before the court on January 26, 1914. It does not appear that the Immigration Commissioner, to whom the writ was directed and upon whom it was served, made any return thereof as required by Rev. Stat. §§ 756, 757 (Comp. St. 1913, §§ 1284, 1285), certifying the true cause of Sitner's taking and detention, or that such return was traversed by Sitner as provided by section 760 (section 1288). The hearing appears to have been without any pleadings subsequent to the writ by either party. It was, as stated in the opinion of the District Court, dated January 26th, "upon the question whether the petitioner was entitled to admission into the United States." The Commissioner relied, without offering other evidence, on the records of the board of special inquiry and of the inspectors before whom the hearing upon the warrant issued May 15, 1913, had been had. Sitner introduced medical and other evidence tending to show that he was not feeble-minded, and, as the opinion states, testified in person, so that the court could exercise its own judgment as to his mental condition. The court found that he was neither feeble-minded nor physically or mentally defective, within the meaning of section 2 of the act (section 4244), that he was entitled to enter, and ordered his discharge. From this order, entered February 5, 1914, the Commissioner has appealed.

[4] No error is made to appear in the findings or rulings of the court upon the evidence before it at the hearing on the writ. Neither the medical certificates nor the findings at either hearing before the immigration officers were conclusive upon the court. As we agree with the court that neither hearing had been the fair hearing required to justify deportation, we think Sitner was rightly discharged.

The order discharging him, however, was made six months before our decision in U. S. v. Petkos, 214 Fed. 978, 131 C. C. A. 274. Had it been made in view of that decision, it would doubtless have been made, not final, but conditional, and to be effective only in case the immigration officers should fail to give Sitner the fair hearing on lawful evidence to which he was entitled, and for which the warrant under which he was held provided, within a reasonable time.    For the reasons there stated, we think this the course best calculated to secure proper administration under the act, in cases involving only an alien's right to admission, and, so far as we can see, there are no special circumstances in this case rendering a different course more desirable.    Our order will therefore be:

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings in accordance with this opinion.