UNITED STATES ex rel. CONSOLA v. KARNUTH, District Director of Immigration.

No. 2252A.

District Court, W. D. New York.

Dec. 7, 1938.

Israel Rumizen, of Buffalo, N. Y., for relator.

George L. Grobe, U. S. Atty., by Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., for respondent.

KNIGHT, District Judge.

This is an application through a writ of habeas corpus to inquire into the legality of a warrant of deportation. Relator was born in Italy. He entered this country legally in 1909, when he was three years of age. He resided in the United States continuously until April, 1929. He was arrested in Brochton, Mass., May 7, 1929. This arrest was upon a charge of armed burglary alleged to have been committed in Canada in April, 1929. Relator waived extradition. He was taken from Massachusetts by a Canadian officer on the Canadian border on the Peace Bridge at Buffalo, New York. He was there refused admission by the Canadian authorities and ordered deported to the United States. Later, however, he was received into Canada for the purposes of his trial on the charge aforesaid by virtue of a standing agreement between the United States Immigration Service and the Canadian authorities that the United States would permit his return to the United States subject to examination as to his right to remain here. He was tried and convicted of the crime aforesaid and served in Canada a prison sentence from May 22, 1929, to October 8, 1937. On the last named date he was brought back by Canadian Immigration officials to the border and delivered to the American Immigration authorities for examination pursuant to the agreement aforesaid, and it is upon such examination that the order of deportation herein was made.

Under the aforesaid agreement between the United States Immigration and the Canadian authorities, the status of the relator remained as it was before he was taken into Canada for trial. The warrant of deportation to which the writ herein was directed charges illegal entry on October 8, 1937. Pending the proceedings upon such writ, another warrant was issued, based upon the same entry as before. and an additional allegation that the relator admitted the commission of a crime involving moral turpitude. It is unnecessary to pass on the question of the effect of the second warrant on these proceedings. Neither warrant can be sustained based upon the entry on October 8, 1937. This decision makes it unnecessary to consider the question raised by the relator as to the effect of any illegal acts in connection with relator's arrest in Massachusetts and his removal to Canada.

Gomes v. Tillinghast, D.C., 37 F.2d 935; U. S. ex rel. Fitleberg v. McCandless, 3 Cir., 47 F.2d 683, and Blumen v. Haff, 9 Cir., 78 F.2d 833, to which the court's attention has been directed by the respondent, each involved the question of the effect of extradition on re-entry. There is no disagreement with the conclusions drawn in these cases. The instant case, however, is determined upon a different state of facts. Here there is shown an agreement which removes any illegal effect of a re-entry on October 8, 1937.

The relator went into Canada in or about April, 1929. The crime charged was committed there on April 16, 1929. He returned to this country prior to May 7, 1929, on which date he was arrested in Massachusetts. Any warrant of deportation under the facts shown here should be based upon such last-mentioned entry.

The respondent asks that, in the event the court sustains the writ, no or-

der be made discharging the relator from custody until the government has had an opportunity to correct its proceedings. In a proper case the court has authority to grant a conditional discharge. Exedahtelos v. Pluckey, 6 Cir., 54 F.2d 858; Wolck v. Weedin, 9 Cir., 58 F.2d 928; Billings v. Sitner, 1 Cir., 228 F. 315. The facts justify the granting it.

It is therefore ordered that relator be discharged upon the warrants of deportation aforesaid twenty days after the filing of this order, provided a new warrant of deportation is not procured within such time, charging re-entry on or about April, 1929.